IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-02695-WDM-KLM

FRANK LORD,

    Plaintiff,

v.

JASON HALL, Colorado Springs Police Officer,
RICHARD HAYES, Colorado Springs Police Officer, and
UNKNOWN COLORADO SPRINGS POLICE OFFICERS,

    Defendants.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

    This matter is before the Court on Defendants' **Motion for Civil Gag Order** [Docket No. 21; Filed June 10, 2011] (the "Motion"). The Court expedited the parties' briefing on the Motion [Docket No. 23]. Plaintiff filed a Response in opposition to the Motion on June 20, 2011 [Docket No. 24] and Defendant filed a Reply on June 21, 2011 [Docket No. 25]. The Motion has been fully briefed and is ripe for resolution. For the reasons set forth below,

    IT IS HEREBY **ORDERED** that the Motion is **DENIED**.

    This matter pertains to events surrounding a police stop that occurred in Colorado Springs, Colorado on July 26, 2010 during which Plaintiff claims that Defendants used excessive force to detain him. *Scheduling Order* [#10] at 2-3. Defendants contend that their actions were reasonable. *Id.* at 3. The Complaint raises constitutional claims

pursuant to 42 U.S.C. § 1983 and claims for assault and battery pursuant to Colorado state law.  *Complaint* [#1] at 5-7.

The Motion relates to a DVD created by Plaintiff's counsel which contains "a compilation of selected portions of [unsworn] interviews and depositions" regarding the events that transpired during and after Defendants' police stop of Plaintiff.  *Motion* [#21] at 3.  Defendants contend that the DVD is edited in such a way as to permit the statements to be "taken out of context" and to unnecessarily "demonstrate the severity of Plaintiff's alleged injuries [by convincing] a prospective jury that the Defendants are responsible for the alleged injuries."  *Id.*  To this end, Defendants argue that "[t]he only purposes in releasing this DVD are to garner sympathy for the Plaintiff, and to prejudice a prospective jury by prejudging the Defendants' liability."  *Id.* at 3-4.  Accordingly, Defendants contend that because the DVD "compromises their right to a fair trial and the judicial process," Plaintiff should be prohibited from releasing it to the media.  *Id.* at 4.

In response, Plaintiff argues that there has been limited press coverage about this incident to date and that "[t]he jury pool would hardly be contaminated by an article from Colorado Springs given the prospective jurors would be primarily from Denver."  *Response* [#24] at 3.  Further, Plaintiff suggests that it is merely speculative that the press would be interested in or attempt to follow up with Plaintiff about the story.  *Id.*  Accordingly, Plaintiff argues that "restraint on speech is 'one of the most extraordinary remedies known in our jurisprudence' and to base a gag order request on . . . speculation the press would be interested in a video summarizing the case is not a valid request . . . ."  *Id.* (citation omitted).

The parties assert that the Court should apply a multi-factor test set forth in

*Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 562 (1976) to resolve the Motion. *See also Pfahler v. Swimm*, No. 07-cv-01885-WJM-KLM, 2008 WL 323244 (D. Colo. Feb. 4, 2008) (citing *Nebraska Press Ass'n* test and rejecting request for gag order). Specifically,

> In determining whether an order restraining speech is appropriate, the court must evaluate "(a) the nature and extent of pretrial news coverage; (b) whether other measures would be likely to mitigate the effects of unrestrained pretrial publicity; and (c) how effectively a restraining order would operate to prevent the threatened danger. . . . [The court] must then consider whether the record supports the entry of a prior restraint on publication [or speech], one of the most extraordinary remedies known to our jurisprudence."

*Pfahler*, 2008 WL 323244, at *2 (quoting *Nebraska Press Ass'n*, 427 U.S. at 562). Here, those factors weigh against imposing a gag order.

First, in relation to the nature and extent of the pretrial news coverage, according to Plaintiff there has been only one article – published in the Colorado Springs newspaper, *The Gazette*, on November 8, 2010 – about this incident to date. *See Response* [#24] at 3. Morever, it is entirely unclear whether dissemination of the DVD will result in any additional press coverage. Simply, Defendants have failed to show that there is anything significant about the prior press coverage or the potential press coverage that is "so great that a fair trial cannot be obtained" in this case. *See Pfahler*, 2008 WL 323244, at *2.

Second, in relation to whether other measures are likely to mitigate any prejudice caused by the press coverage, the Court notes that in this District, the jury pool consists of prospective jurors from throughout the state of Colorado. Even assuming that the DVD leads to press coverage outside of Colorado Springs, Defendants have failed to credibly show that such coverage has the capacity to taint a jury pool made up of individuals from the entire state. Moreover, voir dire can effectively address whether potential jurors have

seen press coverage and whether it impacts their view of the case. *See id.* (noting that "the potential jury pool will have to go through extensive voir dire . . . in the area of pretrial publicity that will assure that a fair and impartial jury will be selected to hear the case"). Further, to the extent that Defendants contend that the DVD does not accurately portray the facts of the case, they are free to rebut its contents in the public forum through whatever means they deem necessary.

Third, in relation to whether the requested gag order would effectively eliminate the threatened danger, the Court notes that Defendants seek to prohibit the release of the DVD and "any other prejudicial communications." *See Motion* [#21] at 4. As a preliminary matter, there is no basis for imposing a blanket prohibition on Plaintiff from releasing "prejudicial communications." Even were the Court to take the extreme action of prohibiting Plaintiff from disseminating the DVD, Defendants' request would not have the effect of prohibiting Plaintiff from talking to the press about his version of events. Moreover, having viewed the DVD, there is nothing so prejudicial about its contents that its exclusion would assure Defendants that no similarly negative press coverage could occur in the future.

Finally, while I have "wide discretion . . . to protect the judicial processes from influences that pose a danger to effective justice," in order to impose a gag order, the record must support the contention that there is a "reasonably likelihood" that press coverage will impact a party's ability to receive a fair trial. *Journal Pub. Co. v. Mechem*, 801 F.2d 1233, 1236 (10th Cir. 1986); *United States v. Tijerina*, 412 F.2d 661, 666 (10th Cir. 1969). Here, Defendant has not shown that the record supports entry of a gag order. Accordingly, I do not find that Defendants' fear of negative publicity "justifies . . . invasion of [Plaintiff's] free speech." *See Nebraska Press Ass'n*, 427 U.S. at 562.

Dated: June 28, 2011

BY THE COURT:

s/ Kristen L. Mix
Kristen L. Mix
United States Magistrate Judge